UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:03-cr-112 |
| | ) | |
| v. | ) | Honorable David W. McKeague |
| | ) | |
| DOUGLAS EMMANUEL CAREY, III, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a proceeding brought by a federal prisoner to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Defendant is serving a sentence of 130 months' imprisonment, imposed by United States District Judge David W. McKeague on June 1, 2004, after defendant entered a plea of guilty to a charge of armed bank robbery. 18 U.S.C. § 2113(a), (d). Defendant did not appeal. On April 25, 2005, defendant filed a motion to vacate, set aside, or correct his sentence, setting forth two grounds for relief. First, defendant asserts that his sentence was enhanced under the federal sentencing guidelines by judicial factfinding, in violation of defendant's Sixth Amendment rights. Second, he asserts that his plea of guilty was not knowingly and intentionally made, because he was rushed into the plea without investigation.

Promptly after the filing of a section 2255 motion, the court must undertake a preliminary review of the motion to determine whether "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." Rule 4(b), RULES GOVERNING § 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT

COURTS. If the movant is not entitled to relief, the court "shall make an order for its summary dismissal." *Id.* Dismissal without a hearing is appropriate if the defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). This section 2255 proceeding has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2255 Proceedings in the District Courts. Upon review of the record, I conclude that the petition is meritless and recommend that it be summarily denied.

**Proposed Findings of Fact**

This criminal prosecution arose from an armed bank robbery that occurred in Allegan County, Michigan, on July 14, 2000. Two men wearing bandanas entered a branch of Comerica Bank located in Plainwell, Michigan. One of the men was brandishing a semi-automatic pistol. The two robbers entering the bank procured approximately $26,700.00 by threatening bank employees. They left the bank and escaped in a car with two accomplices.

A tip led the FBI to Ronnie Glasgo, one of the men in the getaway car. Glasgo cooperated with authorities and named Dane Kemp, and two other men, known only by their nicknames, as his accomplices. Glasgo informed the FBI that Dane Kemp and "G" had entered the bank, and that Kemp had possession of the firearm. Glasgo was allowed to plead guilty to a state felony charge in exchange for his cooperation.

On July 10, 2002, the Grand Jury returned a single-count indictment against Dane Garfield Kemp, who was serving a sentence in state prison for an unrelated conviction. *United*

*States v. Kemp*, case no. 1:02-cr-161. The record indicates that Kemp entered a guilty plea and was sentenced to a term of 72 months on March 27, 2003. In his proffer to authorities, Kemp identified Douglas Carey, whose nickname was "G," as one of his accomplices. In imposing sentence, District Judge Gordon J. Quist granted Kemp a downward departure pursuant to U.S.S.G. § 5K1.1 in exchange for his cooperation against the remaining two suspects (Soule and Carey), who had not yet been apprehended.

On April 23, 2003, the Grand Jury returned an indictment charging the remaining two suspects, Andre Allen Soule and Douglas Emmanuel Carey, III, with armed bank robbery. Soule, who was serving a state prison sentence for drug distribution, made his first appearance on May 20, 2003. On October 31, 2003, Soule entered a plea of guilty pursuant to a plea agreement. (*See* Soule Plea Hearing Transcript, docket # 22). During his allocution, Soule admitted his role in the bank robbery and testified that defendant was one of the two men who entered and robbed the Comerica Bank. (*Id.*, 33-39). The Assistant United States Attorney indicated that Soule, as well as Glasgow and Kemp, were cooperating in the government's investigation and that the only outstanding suspect was defendant Douglas Carey. (*Id.*, 40).

In the early morning hours of January 10, 2004, the FBI located Carey in Grand Rapids, Michigan. He fled into a residence located at 1105 Thomas Street. Police surrounded the residence and attempted to negotiate a peaceful surrender. Carey deliberately started a fire in the basement of the structure, causing authorities to evacuate surrounding houses. After a two-hour standoff, Carey escaped the fire that he had set and was arrested. Because of the duration of the fire, the structure was a total loss. Carey was taken into custody and made his first appearance on Monday, January 12, 2004. He was arraigned on the armed bank robbery charge three days later,

accompanied by his appointed CJA panel attorney, Jeffrey O'Hara. Approximately two weeks later, Judge McKeague sentenced co-defendant Andre Soule to a term of 144 months' imprisonment. The record indicates that the court granted the government's motion for a downward departure on behalf of Soule arising from his cooperation against Carey.

Judge McKeague scheduled a jury trial for Douglas Carey on March 2, 2004. On February 26, 2004, defendant and counsel appeared before Judge McKeague for purposes of entering a plea of guilty. The parties tendered to the court a plea agreement (docket # 43) containing the following material provisions:

- Defendant admitted that he was guilty of armed robbery of the Comerica Bank branch in Plainwell, Michigan, on July 14, 2000. (¶ I(C.)).

- Defendant acknowledged that he was aware of the penalties he faced (¶ II) and the rights that he gave up by pleading guilty (¶ III).

- Defendant admitted the facts constituting armed bank robbery, and further admitted deliberately setting a fire in the basement of 1105 Thomas Street, Grand Rapids, Michigan, in an effort to avoid apprehension. (¶ IV(B)).

- The plea agreement contained extensive stipulations concerning guideline sentencing. The parties stipulated that the base offense level for the robbery under U.S.S.G. § 2B3.1(a) was 20. (¶ IV(C)). In addition, the plea agreement set forth the following guideline stipulations:

    1.  The parties agree and stipulate that the property of a financial institution was taken and the Offense Level should therefore be increased by 2 levels. U.S.S.G. § 2B3.1(b)(1).

    2.  The parties agree and stipulate that a firearm was brandished or possessed during the robbery, and the Offense Level should be increased by 5 levels under U.S.S.G. § 2B3.1(b)(2)(C).

> 3. The parties agree and stipulate that the bank loss exceeded $10,000 but was not more than $50,000; therefore, 1 level should be added to the Offense Level under U.S.S.G. § 2B3.1(b)(7)(B).
>
> 4. The parties agree and stipulate that the Defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation and prosecution of the instant offense of conviction, and the obstructive conduct related to the Defendant's offense of conviction and any relevant conduct; therefore, the Offense Level should be increased by 2 levels under U.S.S.G. § 3C1.1.
>
> 5. The parties agree and stipulate that the Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer; therefore, 2 levels should be added to the Offense Level under U.S.S.G. § 3C1.2.

(¶ 4(C)).

In the plea agreement, defendant waived his right to appeal any sentence within the final adjusted offense level of 32 or below. (¶ VIII). The same paragraph contained a waiver of defendant's "right to challenge his sentence or the manner in which it was determined or how it was to be served in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255." Judge McKeague engaged defendant in a Rule 11 plea colloquy, during which he admitted both his complicity in the robbery and his act of arson.

United States Probation Officer Linda A. Skrycki submitted a presentence investigation report (PSIR) under revised date May 18, 2004. The PSIR recited the history of the investigation and summarized the probation officer's presentence interview of defendant, during which defendant admitted entering the bank with Kemp, jumping onto the teller's counter, and gathering money. (PSIR ¶ 37). In accordance with the plea agreement, the PSIR found that the base

offense level for armed bank robbery was 20. (¶ 41). It further reflected a two-point enhancement because the victim was a financial institution, U.S.S.G. § 2B3.1(b)(1), and a five-point enhancement for brandishing a firearm under U.S.S.G. 2B3.1(b)(2)(C). (¶¶ 42, 43). Again, these findings were in accordance with a stipulation in the plea agreement. With regard to amount of loss, the PSIR allocated a total of $193,573.00, which included not only the proceeds of the bank robbery but also the loss occasioned by defendant's act of arson. (¶ 44). The probation officer also assessed a two-point adjustment for obstruction of justice, U.S.S.G. 3C1.2, arising from the arson. (¶ 47). This rendered a total offense level of 31. (¶ 52). The PSIR recited defendant's substantial criminal history, including the fact that defendant was on probation at the time of the offense. The PSIR found that the total criminal history points were 10 and that the criminal history category was V. (¶ 66). These proposed findings rendered a guideline range of 168-to-210 months' imprisonment. (¶ 105).

Defense counsel Jeffrey O'Hara lodged objections to the PSIR. First, he argued that defendant should be granted a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, because he had truthfully admitted his involvement in the bank robbery and had not denied any criminal conduct. The probation officer, relying on comment 4 to that guideline, determined that granting defendant credit for responsibility was inconsistent with defendant's attempts to obstruct justice by setting fire to an occupied dwelling. Defense counsel further objected to inclusion of the loss occasioned by arson in the relevant conduct calculation, arguing that the amount of loss should be limited to the proceeds of the bank robbery alone.

Defendant and counsel appeared before Judge McKeague for sentencing on June 1, 2004. Judge McKeague sustained defendant's objection concerning acceptance of responsibility,

granting him a three-level reduction. This reduced the total offense level to 28, and the guideline range to 130-to-162 months. After hearing allocution, Judge McKeague sentenced defendant to 130 months' imprisonment, at the bottom of the guideline range. Judgement (docket # 46) was entered the same day. The judgment ordered restitution to Comerica Bank for the $26,600.00 loss suffered, as well as restitution in the approximate amount of $166,000.00 for damage to the real property destroyed by defendant's act of arson.

Defendant did not appeal. On April 25, 2005, he filed the present section 2255 motion, contending that the court's factfinding in connection with sentencing violated defendant's Sixth Amendment rights and contending that the guilty plea was not knowing and voluntary because defendant was rushed into it.

## Discussion

### I. Sixth Amendment Claims

Defendant's *pro se* motion asserts that the trial court's findings of fact concerning a number of issues (*e.g.*, brandishing a firearm, victimizing a financial institution, and amount of loss) relevant to guideline sentencing violated his Sixth Amendment rights. In a related argument, he asserts that the court's findings concerning his prior convictions, which resulted in a criminal history category of V, also violated his Sixth Amendment rights.

#### A. Waiver

In paragraph VIII of the plea agreement, defendant waived his right to appeal his sentence, as long as the total offense level was 32 or less. He also waived his right to challenge his sentence in any collateral proceeding, including a section 2255 motion. As noted in the proposed

findings of fact, the total offense level determined by Judge McKeague was 28, well below the stipulated level of 32.

It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement. *United States v. Calderone*, 388 F.3d 197, 199 (6th Cir. 2004). The Sixth Circuit has consistently upheld the validity of provisions of a plea agreement that waive a defendant's right to appeal. *See, e.g., United States v. McGilvery*, 403 F.3d 361 (6th Cir. 2005); *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003). A valid waiver of the right to appeal precludes a defendant's challenge to his sentence under the Sixth Amendment principles established in *United States v. Booker*, 125 S. Ct. 738 (2005). *See McGilvery*, 403 F.3d at 363; *United States v. Bradley*, 400 F.3d 459, 465 (6th Cir. 2005). Similarly, a waiver in the plea agreement of the ability to bring a collateral challenge to his sentence is binding in the Sixth Circuit. *See Watson v. United States*, 165 F.3d 486 (6th Cir. 1999); *accord Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001). Such waivers preclude the right to collaterally attack a sentence, as well as the ability to raise a claim of ineffective assistance of counsel. *See Davila*, 258 F.3d at 451.

The present section 2255 motion was filed in contravention of the clear provisions of paragraph VIII of the plea agreement. Defendant has waived his ability to challenge his sentence by appeal or by section 2255 motion. His motion should be denied on the ground of waiver.

    B.    <u>Merits</u>

Even if defendant's motion is not deemed waived by the plea agreement, it lacks merit. The line of cases upon which defendant seeks to rely began with the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Apprendi* involved judicial enhancement

of a state sentence, beyond that prescribed by statute for the underlying offense, upon a finding that defendant had committed a hate crime. The *Apprendi* Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely v. Washington*, 124 S. Ct. 2531 (2004), the Supreme Court invalidated under the Sixth Amendment a statute of the State of Washington authorizing the sentencing judge to impose a sentence above the standard sentencing range if the judge found aggravating factors that justified such a departure. The *Blakely* Court extended the holding in *Apprendi* by defining the "statutory maximum" as the maximum sentence that a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 124 S. Ct. at 2537.

At the time defendant was sentenced, however, the federal courts had not applied the Sixth Amendment rule of *Apprendi* to invalidate sentencing under the federal sentencing guidelines, as long as the ultimate sentence was within the statutory maximum. *See, e.g., United States v. Lawrence*, 308 F.3d 623, 634 (6th Cir. 2002). In fact, as late as August 26, 2004, the *en banc* Sixth Circuit held that neither *Apprendi* nor *Blakely* required a finding that sentencing under the guidelines violated the Sixth Amendment. *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (*en banc*).

On January 12, 2005, the Supreme Court issued its decision in *United States v. Booker*, 125 S. Ct. 738 (2005). In essence, the *Booker* Court found that mandatory application of the federal sentencing guidelines abridged Sixth Amendment rights and that the remedy for this violation was to treat the guidelines as merely advisory. In so holding, the *Booker* Court phrased the constitutional rule this way: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a guilty plea or a jury

verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt." 125 S. Ct. at 756. Defendant seeks to apply the holding of *Booker* to invalidate his sentence in the present case.

Defendant's Sixth Amendment challenge to his sentence lacks merit, on two separate and independent grounds. First, defendant may not invoke *Booker* retroactively to invalidate his sentence. In general, a criminal defendant may not rely on a new rule of criminal procedure handed down after his conviction has become final. *See Schriro v. Summerlin*, 124 S. Ct. 2519, 2523 (2004). In *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005), the Sixth Circuit determined that the *Booker* decision announced a new rule of criminal procedure that cannot be invoked to upset convictions or sentences that became final before *Booker* was announced. The Court of Appeals further determined that the new rule enunciated by *Booker* does not fall within either of the two narrow exceptions to non-retroactivity recognized by the Supreme Court. 398 F.3d at 862-63. Consequently, under *Humphress*, a federal movant under section 2255 may not invoke *Booker* to challenge application of the sentencing guidelines on Sixth Amendment grounds, if the movant's conviction became final before *Booker* was announced.

When a federal defendant fails to appeal his criminal sentence, his judgment of conviction becomes final for section 2255 purposes upon the expiration of the ten-day period in which the defendant could have appealed. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 426-27 (6th Cir. 2004). Judge McKeague entered judgment on June 1, 2004, and defendant did not appeal. The ten-day period for taking an appeal (excluding intervening weekends and holidays as required by Fed. R. Crim. P. 45(a)) expired on June 15, 2004. Defendant's judgment therefore became final on that day. *Blakely* was not decided until June 24, 2004, and *Booker* was not decided

until January of 2005.  Defendant is therefore precluded from relying on either *Blakely* or *Booker* to upset his conviction.  Under the law as it stood at the time defendant's conviction became final, his sentence did not violate Sixth Amendment principles.  As defendant's sentence was legal when imposed, he is precluded by *Humphress* from challenging his sentence on the basis of *Booker* or any other decision handed down after June 15, 2004.

Defendant's Sixth Amendment claim lacks merit on a second ground.  Even if *Booker* were applicable to this case, Judge McKeague's sentence did not violate the Sixth Amendment principle enunciated therein.  *Booker* determined that sentencing facts must be found by a jury beyond a reasonable doubt, with two exceptions:  (1) facts admitted by the defendant and (2) prior convictions.  125 S. Ct. at 756.  Each of the "enhancements" challenged in plaintiff's motion falls within one or the other exception.  All of the court's findings concerning specific offense characteristics were agreed to by defendant in the plea agreement.  *See United States v. Murdock*, 398 F.3d 491, 501-02 (6th Cir. 2005) (no Sixth Amendment violation where court relied on amount of loss admitted by defendant).  The court's determination of previous criminal history falls squarely within the exception recognized by *Booker* and, indeed, by *Apprendi* itself.  *See Apprendi*, 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty beyond the statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt.") (emphasis added).  Consequently, criminal history determinations fall outside of the Sixth Amendment principles enunciated in *Booker*, *Blakely*, and *Apprendi*.  *See United States v. Shelton*, 400 F.3d 1325, 1329 (11th Cir. 2005).

In summary, defendant's Sixth Amendment challenge must be rejected on three separate grounds.  First, defendant waived his right to appeal his sentence or to challenge it under

section 2255. Second, defendant's claim relies on the impermissible application for the *Booker* decision retroactively. Third, all of the sentencing enhancements challenged by defendant fall within exceptions to the Sixth Amendment principles enunciated by *Booker*.

### II. Voluntariness of Guilty Plea

Defendant also asserts in conclusory fashion that his guilty plea was involuntary because he was rushed into the plea "without investigation." As a factual matter, this conclusory allegation is refuted by the record itself. Defendant was not "rushed into" pleading guilty. He was arraigned on the charge on January 15, 2004, and did not enter his guilty plea until February 26, 2004. The plea proceeding took place only three business days before the commencement of trial, scheduled for March 2, 2004. Rather than being a precipitous plea, this guilty plea was an eleventh-hour event, entered on the virtual eve of trial. Defendant's conclusory accusation that his attorney failed to engage an investigation is also incredible on its face. The court conducted an initial pretrial conference on January 15, 2004, at which the government disclosed its evidence to defendant and his counsel. At that point, defendant was informed that his co-conspirators had all pleaded guilty and were cooperating with the government. Defendant was also informed of the government's intent to file a superseding indictment arising from the arson, charging defendant with a violation of 18 U.S.C. § 844(i). *See* Pretrial Conference Summary Order (docket # 35). Defendant does not inform the court of what other "investigation" was necessary or even possible, given the overwhelming evidence against defendant.

Legally, defendant's motion is insufficient to undermine his guilty plea. The Supreme Court has squarely held that a defendant seeking to challenge the voluntariness of his plea because

-12-

of the acts or omission of counsel must plead and prove facts showing a reasonable probability that defendant would not have pleaded guilty but would have insisted on a trial in the absence of the attorney's alleged error. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In the absence of an allegation that defendant would have insisted on a trial, a collateral challenge must be dismissed. *Id.* In the present case, defendant does not allege that he would have insisted on a trial despite counsel's alleged lack of "investigation." Furthermore, such an allegation would be incredible on its face, as the defendant faced an overwhelming case against him, any sentence entered after a trial would have been significantly more severe, and defendant would have faced a possible consecutive 5-to-40-years sentence on the arson charge under 18 U.S.C. § 844(i), which the government promised not to pursue as part of the plea agreement.

In summary, defendant's conclusory allegations concerning the voluntariness of his plea are incredible on their face and are legally insufficient under Supreme Court authority.

### Recommended Disposition

For the foregoing reasons, I conclude that defendant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (docket # 53) is indisputably meritless and recommend that it be summarily denied under Rule 4.

Dated:   May 17, 2005                         /s/  Joseph G. Scoville
                                              United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All

objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).